# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
## Richmond Division

| | | |
|---|---|---|
| ATLANTIC CASUALTY INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 3:20cv275–HEH |
| CONNECTION AUTO SALES, INC., *et al.*, | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION
### (Granting Plaintiff's Motion for Summary Judgment)

On May 29, 2019, Defendant Antonio Mendoza ("Mendoza") was involved in a motor vehicle accident with Defendant Larry Smith ("Smith"). Smith filed suit in the Circuit Court for the City of Richmond on February 3, 2020, bringing damages claims resulting from the accident against Mendoza and others, including Defendant Connection Auto Sales, Inc. ("CAS"). Plaintiff Atlantic Casualty Insurance Company ("Plaintiff") issued an insurance policy to CAS covering a time period including May 29, 2019. Plaintiff filed this declaratory judgment action seeking this Court's construction of the pertinent terms and provisions at issue, and a determination that Plaintiff has no duty to defend or indemnify CAS and Mendoza in the underlying state action.

The parties have filed memoranda supporting their respective positions (ECF Nos. 23–25), and the Court heard oral argument on December 15, 2020. For the reasons stated herein, Plaintiff's Motion for Summary Judgment will be granted.[1]

The material facts are largely undisputed. On May 29, 2019, Mendoza was driving a 2006 Toyota Tacoma ("the Tacoma") when he was involved in an accident with Smith. (Pl.'s Mem. Supp. Summ. J. 2, ECF No. 23 [hereinafter Pl.'s Mem.].) At the time of the accident, the Tacoma was titled in the name of Sergio Castillo Olivo ("Olivo"), and Mendoza was a lienholder. (*Id.* at 1–2.) Mendoza and Olivo worked together at a drywall company, and at Olivo's request Mendoza bought the Tacoma at a dealer auction. (Mendoza Dep. 16:18–17:9, 44:20–45:8, Def.'s Mem. Opp. Ex. 1, ECF No. 24-1.) Mendoza obtained auction credentials through the president of CAS, Lillian Garcia ("Garcia"), to attend car auctions for dealers. (*Id.* at 11:16–13:13.) Garcia also provided Mendoza with dealer plates so that he could move the cars he bought at auction. (Garcia Dep. 14:7–16, ECF No. 24-2.) In exchange, Mendoza paid Garcia a monthly fee of $350.00 as well as a fee based on the model of vehicle purchased, averaging approximately $300.00 per vehicle. (Mendoza Dep. 15:1–20.) He purchased the Tacoma

---

[1] Plaintiff's only claim in its Complaint is for a declaratory judgment that it has no duty to defend or indemnify Mendoza or CAS in the underlying state suit. (ECF No. 1.) A Clerk's Entry of Default was entered against Mendoza and CAS in this Court on September 9, 2020 (ECF No. 20), but Plaintiff has not moved for a default judgment against either party. Smith, the third Defendant in this declaratory judgment action, alone opposed Plaintiff's Motion for Summary Judgment, presumably to protect his ability to obtain monetary damages from Mendoza and CAS in the underlying state action. This Court will grant Plaintiff's Motion for Summary Judgment, thereby awarding Plaintiff its requested declaratory judgment, and will accordingly dismiss this action as to all three Defendants.

2

at a dealer auction with his own money, but used a cashier's check issued by CAS. (*Id.* at 70:16–72:19.)

On March 22, 2016, CAS sold the Tacoma to Olivo with Mendoza as lienholder. (Pl.'s Mem. Ex. 3, ECF No. 23-3.) After March 22, 2016, CAS no longer held any interest in the Tacoma. (Mendoza Dep. 54:9–56:22.) Mendoza repeatedly made similar transactions, selling cars bought at auction through CAS to other friends or acquaintances. (*Id.* at 15:17–16:5.) Before the accident, Olivo advised Mendoza that he could no longer make payments on the lien and Mendoza repossessed the Tacoma. (Pl.'s Mem. 1.) When Mendoza repossessed the Tacoma from Olivo, it was damaged and in need of repairs so he had it towed to Best Auto Sale, LLC ("Best Auto"). (*Id.*) The collision occurred after Mendoza picked the Tacoma up from Best Auto. (*Id.* at 2.) Smith thereafter filed the underlying suit in state court, alleging in part that Mendoza and CAS are jointly and severally liable to Smith for injuries and damages caused by the accident in the amount of $500,000.00, plus interest and costs. (*Id.*) Plaintiff issued an insurance policy ("the Policy") to CAS with a policy period covering March 29, 2019 to March 29, 2020. (*Id.*)

After Smith filed the underlying suit in state court, Plaintiff filed the instant action seeking a declaration that the Tacoma was not covered by the Policy at the time of the accident. In its Motion, Plaintiff asserts that the Policy did not cover the Tacoma because Mendoza was not a CAS employee and he was not using the Tacoma in connection with CAS when the accident occurred. Smith, in his opposition brief, argued that the Tacoma was covered by the Policy because a reasonable fact finder could conclude that, at the

3

time of the accident, Mendoza was a CAS employee and that, when the collision occurred, he was using the Tacoma in connection with Defendant CAS. However, at oral argument, counsel for Smith conceded that the evidence in the record is insufficient to support that Mendoza was a CAS employee or agent, and argued only that on May 29, 2019, Mendoza was using the Tacoma in connection with CAS.

The standard of review for summary judgment motions is well settled in the Fourth Circuit. Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The relevant inquiry in the summary judgment analysis is "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine factual dispute exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48 (emphasis in original). A material fact is one that might affect the outcome of a party's case. *Id.* at 248; *JKC Holding Co. LLC v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). A genuine issue concerning a material fact only arises when the evidence, viewed in the light most favorable to the non-moving party, is sufficient to

allow a reasonable trier of fact to return a verdict in the party's favor. *Anderson*, 477 U.S. at 248.

To defeat an otherwise properly supported motion for summary judgment, the non-moving party must rely on more than conclusory allegations, mere speculation or the building of one inference upon another or the mere existence of a scintilla of evidence concerning a material fact. *Stone v. Liberty Mut. Ins. Co.*, 105 F.3d 188, 191 (4th Cir. 1997) (internal citations omitted). Accordingly, to deny a motion for summary judgment, "[t]he disputed facts must be material to an issue necessary for the proper resolution of the case, and the quality and quantity of the evidence offered to create a question of fact must be adequate . . . ." *Thompson Everett, Inc. v. Nat'l Cable Adver., L.P.*, 57 F.3d 1317, 1323 (4th Cir. 1995) (citing *Anderson*, 477 U.S. at 252). "Thus, if the evidence is 'merely colorable' or 'not sufficiently probative,' it may not be adequate to oppose entry of summary judgment." *Id.* (citing *Anderson*, 477 U.S. at 249–50). The Court cannot weigh the evidence or make credibility determinations in its summary judgment analysis. *See Williams v. Staples, Inc.*, 372 F.3d 662, 667 (4th Cir. 2004).

The parties agree that Virginia law governs this dispute.[2] Under Virginia law, courts must construe the language of a contract as written; courts cannot make a new

---

[2] A federal district court exercising diversity jurisdiction applies the choice-of-law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941). "Applying Virginia choice-of-law principles, questions concerning the validity, effect, and interpretation of a contract are resolved according to the principle of *lex loci contractus*, *i.e.*, the law of the state where the contract was made controls." *Sys. Rsch. & Applications Corp. v. Rohde & Schwarz Fed. Sys., Inc.*, 840 F. Supp. 2d 935, 941 n.1 (E.D. Va. 2012) (citing *Woodson v. Celina Mut. Ins.*, 177 S.E.2d 610, 613 (Va. 1970) (internal citations omitted)); *see also Buchanan v. Doe*, 431 S.E.2d 289, 291 (Va. 1993) ("[T]he law of the place where an insurance contract is written and

5

contract for the parties different from that plainly intended. *Pilot Life v. Crosswhite*, 145 S.E.2d 143, 146 (Va. 1965). This is particularly so when a contract involves an insurance policy because,

> in the absence of constitutional or statutory barriers, the parties thereto are at liberty to make their own agreement. It needs no citation of authority to assert that where there is ambiguity in the terms of an insurance policy, they should be liberally construed in favor of the insured and against the drafter of the policy; but this does not mean that a strained or unjustified construction of the policy is to be adopted, which disregards the plain meaning and intent of the parties.

*Quesenberry v. Nichols*, 159 S.E.2d 636, 672 (Va. 1968). "[A] court must adhere to the terms of a contract of insurance as written, if they are plain and clear and not in violation of law or inconsistent with public policy." *Nat'l Hous. Bldg. Corp. v. Acordia of Va. Ins. Agency, Inc.*, 591 S.E.2d 88, 90–91 (Va. 2004) (quoting *Blue Cross & Blue Shield v. Keller*, 450 S.E.2d 136, 140 (Va. 1994)).

In an insurance contract dispute, Virginia courts place the burden on the policyholder "to bring himself within the policy." *TRAVCO Ins. v. Ward*, 715 F. Supp. 2d 699, 706 (E.D. Va. 2010) (quoting *Md. Cas. Co. v. Cole*, 158 S.E. 873, 876 (Va. 1931)). If the policyholder does so, the burden shifts to the insurer to prove that an exclusion applies, as policy exclusions constitute an affirmative defense. *Transcon. Ins. v. RBMW, Inc.*, 641 S.E.2d 101, 104 (Va. 2007).

CAS is the named insured on the Policy, but the Tacoma was not a covered auto at the time of the accident. The Policy provides liability coverage for "insureds" for

---

delivered controls issues as to its coverage."). Here, Plaintiff issued the contract in Virginia, and thus Virginia law applies.

6

"covered 'autos.'" (Pl.'s Mem. Ex. 7 at 50, ECF No. 23-7.) The Policy states that: "[t]hroughout this policy the words 'you' and 'your' refer to the Named Insured shown in the Declarations . . . ." (*Id.* at 48.) CAS was the "named insured" under the Policy. (*Id.* at 6) (altered capitalization). Thus, "you" and "your" in the Policy refers to CAS. Covered autos are defined as "owned 'autos'" and "non-owned 'autos' used in your 'auto' dealership." (*Id.* at 48) (altered capitalization). The parties agree that the Tacoma was an auto but not an owned auto as defined by the Policy. The parties disagree as to whether the Tacoma was a "non-owned 'auto[]' used in your 'auto' dealership" under the Policy ("covered unowned auto"), but agree that the Policy defines covered unowned autos as:

> Any "auto" you do not own, lease, hire, rent or borrow used in connection with your "auto" dealership . . . . This includes "autos" owned by your "employees" or partners (if you are a partnership), members (if you are a limited liability company) or members of their households while used in your "auto" dealership.

(*Id.*) The Supreme Court of Virginia, interpreting a near identical insurance policy provision, held that this language is not ambiguous. *Bartolomucci v. Fed. Ins. Co.*, 770 S.E.2d 451, 456–57 (Va. 2015).[3] In that case, the court determined that a lawyer driving from his home to the law firm's office was not using his car in the firm's "business or

---

[3] The *Bartolomucci* court interpreted the following insurance policy provision:

> Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your "employees," partners (if you are a partnership), members (if you are a limited liability company), or members of their households but only while used in your business or your personal affairs.

770 S.E.2d at 457.

7

personal affairs." *Id.* at 457. The court split the policy provision sentences, finding that the first sentence applied "generally, to vehicles not owned" by the firm, and that the second sentence applied "to a specific subset of non-owned vehicles." *Id.* The lawyer seeking coverage under the insurance policy in that case was a partner at the covered law firm, so the court held that sentence two applied, but that his commute did not constitute firm business or affairs. *Id.* at 457–58. As the first sentence was not at issue in that case, the court did not explicitly define "in connection with" firm business, but defined "business affairs" as "a legal entity's income-producing activities" and "personal affairs" as "non-income-producing activities that benefit the business." *Id.* at 456–57.

In this case, as explained in more detail below and as counsel for Smith conceded at oral argument, Mendoza was not an employee or agent of CAS. CAS is a corporation, not a partnership or a limited liability company. Thus, sentence one cabins this Court's analysis of whether the Tacoma was a covered auto at the time of the accident. *See id.* at 457. The Policy in this case does not define the phrase "in connection with." Therefore, it must be given its ordinary meaning. *Scottsdale Ins. v. Glick*, 397 S.E.2d 105, 108 (Va. 1990). "Connection" is defined as "contextual relation or association . . . ." *Connection*, Merriam-Webster's Collegiate Dictionary (10th ed. 1998).

The record before this Court is devoid of any evidence that, at the time of the accident, Mendoza was using the Tacoma in association with CAS's income-producing activities or any activity benefitting CAS. CAS had no ownership interest in the Tacoma after it sold the truck to Olivo on March 22, 2016. Mendoza alone received Olivo's installment payments. After Mendoza repossessed the Tacoma, he intended to either

8

return the Tacoma to Olivo if he could start making payments again or to personally sell it to someone else. (Mendoza Dep. 20:7–21:1.) Mendoza specifically stated that if he resold the Tacoma, it would not be through CAS but "just by [him]self." (*Id.* at 20:10–12.) He further explained that this was "[b]ecause [he] was just going to resell it again." (*Id.* at 20:13–17.) After counsel asked him a third time whether he would involve CAS in any potential resale, he stated: "I mean, if I took it to the dealer with her, maybe." (*Id.* at 20:7–21:4.) On two separate occasions, Mendoza clarified that if he resold the Tacoma, he would not give any of the proceeds to CAS. (*Id.* at 54:3–8, 56:5–57:9.) Taking the evidence in the light most favorable to Smith as the non-moving party, at most there was only a possibility that Mendoza in the future might solicit the assistance of CAS, a car dealership, in selling a car that he owned. No reasonable trier of fact could conclude that, based only on this possibility, Mendoza was acting in any way to benefit CAS when driving the Tacoma away from Best Auto.

At the scene of the accident, Mendoza told police that he was "working for [CAS]," gave police CAS's insurance information, and showed police photos of the dealer plates that he obtained from Garcia. (*Id.* at 30:5–31:6.) Mendoza did not individually obtain insurance for the Tacoma, and was driving without license plates at the time of the collision. (*Id.* at 30:8–17, 36:3–37:1, 59:1–19.) According to Mendoza, after the accident he called Garcia, who told him to show the police a picture of the dealer's plates. (*Id.* at 59:12–19.) During the same phone call, Garcia allegedly told Mendoza to give CAS's insurance information to the police. (*Id.* at 30:5–31:6, 60:7–61:17.) For her part, Garcia was unsure that she talked to Mendoza on the date of the

9

accident, denied that Mendoza was ever on CAS's insurance policy, and denied telling him that he could use the dealer's plates and insurance. (Garcia Dep. 26:15–27:7, 29:5–18.) It is unclear to this Court, based upon the evidence before it, whether Garcia told Mendoza to provide CAS's dealer plates and insurance to the police at the scene of the accident. Mendoza's allegation is contradicted both by Garcia's deposition and the likelihood that these were opportunistic statements because Mendoza was driving the Tacoma without his own insurance for the vehicle and without any license plates.

Regardless, even if CAS did authorize Mendoza to use its dealer's plates and insurance information at the scene of the accident, this is not dispositive of whether, at the time, Mendoza was operating the Tacoma in association with any activity benefitting CAS. *See Bartolomucci*, 770 S.E.2d at 457–58 (deciding that the lawyer seeking coverage was not conducting firm-related activity during his commute, citing the lack of evidence that the lawyer billed the firm for any activity conducted during his commute, was reimbursed for his commute, or used his firm-issued cell phone during the commute). Even if Mendoza had some form of business relationship with CAS that included use of CAS's dealer plates, there is no evidence before this Court that on May 29, 2019, when Mendoza was involved in an accident while driving a vehicle that he owned, he was operating in association with CAS. Accordingly, the Court finds that the Tacoma was not a covered auto at the time of the accident, and Plaintiff's Motion for Summary Judgment will be granted as to CAS.

For the aforementioned reasons, Plaintiff's Motion for Summary Judgment will also be granted as to Mendoza. However, even if the Tacoma had been a covered auto at

10

the time of the accident, Mendoza is not an insured under the Policy, and therefore is not covered by the Policy. Only "insureds" as defined by the Policy are afforded liability coverage for covered autos. (Pl.'s Mem. Ex. 7 at 48–50.) "Insureds" are: (a) CAS; (b) anyone using a covered auto that CAS owns, hires, or borrows (with certain exceptions); (c) anyone liable for the conduct of someone who falls under either (a) or (b); and (d) CAS employees using a covered unowned auto in CAS business or CAS personal affairs. (*Id.* at 50.) Sections (a)–(c) do not apply to Mendoza, and although Smith argued in his opposition brief that a reasonable trier of fact could conclude that Mendoza was a CAS employee, counsel abandoned this argument at oral argument. The Court finds, therefore, that Mendoza was not a CAS employee at the time of the accident and was not a covered insured under the Policy. The Court will accordingly grant Plaintiff's Motion for Summary Judgment as to Mendoza.

This Court finds no genuine dispute of material fact that, at the time of the accident, under the Policy the Tacoma was not a covered auto and Mendoza was not an insured. Based on the foregoing analysis, Plaintiff's Motion for Summary Judgment will be granted (ECF No. 22).

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
Senior United States District Judge

Date: Dec. 22, 2020
Richmond, Virginia